Erie County Empls.' Retirement Sys. v NN, Inc. (2022 NY Slip Op 03473)





Erie County Empls.' Retirement Sys. v NN, Inc.


2022 NY Slip Op 03473


Decided on May 31, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 31, 2022

Before: Webber, J.P., Kern, Oing, Scarpulla, Pitt, JJ. 


Index No. 656462/19 Appeal No. 16039 Case No. 2021-02102 

[*1]Erie County Employees' Retirement System, Plaintiff-Respondent,
v
NN, Inc., et al., Defendants-Appellants.


Simpson Thacher & Bartlett LLP, New York (Jacob Lundqvist of counsel) and Simpson Thacher & Bartlett LLP, Washington D.C. (Karen Porter of the bar of the District of Columbia, admitted pro hac vice, of counsel), for NN, Inc., Richard D. Holder, Thomas C. Burwell, Jr., Robert E. Brunner, William Dries, David K. Floyd, David L. Pugh and Steven T. Warshaw, appellants.
Scott & Scott, LLP, New York (Deborah Clark-Weintraub of counsel), for respondent.



Order, Supreme Court, New York County (Andrew Borrok, J.), entered June 9, 2021, which denied defendants' motion to dismiss the complaint pursuant to CPLR 3211(a)(1) and (7), unanimously affirmed, with costs.
This 1933 Securities Act case stems from NN's 2018 secondary public offering (SPO) in which it offered shares pursuant to a Registration Statement and Prospectus (offering documents) through the underwriter defendants J.P. Morgan Securities LLC, Robert W. Baird & Co., KeyBanc Capital Markets Inc., SunTrust Robinson Humphrey, Inc., Lake Street Capital Markets, LLC, Stephens Inc., William Blair & Co., L.L.C., CJS Securities, Inc., and Regions Securities LLC.[FN1] Plaintiff Eerie County purchased shares directly in the SPO.
In the offering documents, defendants portrayed NN as a "global diversified industrial company" with limited "volatility" given that it was resistant to "localized market and geographic fluctuations" because of the "diverse nature, size and reach of [its] customer base," which "help stabilize[] overall product demand." Further, the offering documents stated that "[t]he Asian and South American Facilities, we believe, have significant growth potential as local customer bases expand and the markets for high-precision products grow in those regions."
As an initial matter, defendants' argument that plaintiff lacks standing to sue under section 12(a)(2) is belied by established caselaw (see Hawaii Structural Ironworkers Pension Trust Fund v AMC Entertainment Holdings, Inc., 422 F Supp 3d 821, 856 [SD NY 2019] [the plaintiffs' allegation "that they purchased shares pursuant to the SPO underwritten by the Underwriter Defendants" sufficed, even though those defendants "were only four of fourteen underwriters"]; Schoenhaut v American Sensors, Inc., 986 F Supp 785, 789, 790 n 6 [SD NY 1997] [the plaintiffs had standing, even though they merely "alleged that they purchased securities 'pursuant to or traceable to' a public offering"; they did not have to "specify which underwriter sold securities to each plaintiff"]).
As we have previously held, claims for violations of sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (15 USC §§ 77k, 77l[a][2], and 77o) are not subject to the heightened pleading requirements of CPLR 3016(b) (Feinberg v Marathon Patent Group Inc., 193 AD3d 568 [1st Dept 2021]), and here, plaintiff's complaint sufficiently states claims for violations of those statutes.
Despite defendants' argument to the contrary, the alleged misstatements in the SPO cannot be deemed forward-looking or mere puffery as a matter of law because the complaint alleges that defendants knew at the time of the SPO that present facts rendered statements in the SPO misleading or false. The generic, boilerplate risk warnings in the offering documents do not shield defendants from liability (see In re Bioscrip, Inc. Secs. Litig., 2015 WL 3540736, at *6, 2015 US Dist LEXIS 73484, at *16-17 [SD NY June 5, 2015]).
Moreover, plaintiff adequately [*2]alleges that, once NN spoke about its "significant exposure to emerging markets in Asia," it was obligated to disclose the "whole truth," namely that its mobile solutions business in China was actually experiencing a sharp decline at the time of the SPO (see Meyer v Jinkosolar Holdings Co., Ltd., 761 F3d 245 [2d Cir 2014]).
Plaintiff also adequately alleged that the individual defendants "solicited the investing public to purchase securities issued pursuant [to the Offering Documents], hired and assisted the underwriters, planned and contributed to the SPO and Offering Documents, and attended or contributed to road shows or other promotions to meet with, and present favorable information to, potential NN investors." Therefore, plaintiff sufficiently stated a claim under § 12 (see Hawaii Structural Ironworkers, 422 F Supp 3d at 857 [deeming § 12 claim sufficiently pleaded where the plaintiffs alleged that individual defendants participated in both the preparation of the registration statement and road shows with investors]; cf. Labourers' Pension Fund of Cent. & E. Can. v CVS Health Corp., 192 AD3d 424 [1st Dept 2021]).
In support of its claims based on defendants' alleged failure to comply with Item 303 and Item 503 of SEC Regulation S-K, plaintiff alleged that NN knew about the slowdown in China and the loss of customers prior to filing the offering documents. Hence, plaintiff adequately plead that defendants failed to comply with Item 303 and Item 503 (see Stadnick v Vivint Solar, Inc., 861 F3d 31, 39 [2d Cir 2017]). Defendants' contention that NN's 10-K warned of the risks by stating, "[w]e depend heavily on a relatively limited number of customers, and the loss of any major customer would have a material adverse effect on our business," is meritless. This warning is misleading in that "would have a material adverse effect" does not indicate that a material adverse effect has already transpired.
Imposition of liability under § 15 of the '33 Act on those who directly or indirectly exert control over a primary securities law violator, requires a plaintiff to "allege facts that set forth a primary violation of the securities laws and a defendant's control person status" (see Acacia Natl. Life Ins. Co. v Kay Jewelers, Inc., 203 AD2d 40, 45 [1st Dept 1994]). As plaintiff has sufficiently pleaded claims for §§ 11 and 12, the § 15 claim is also
sufficiently pleaded.
We have considered defendants' remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 31, 2022



Footnotes

Footnote 1: In addition to NN and the underwriter defendants, the complaint named the following individual defendants: Thomas C. Burwell, Jr. (NN's Senior Vice President and Chief Financial Officer); Robert E. Brunner (NN Board Member); William Dries (NN Board Member); David K. Floyd (NN Board Member); Steven T. Warshaw (NN Board Member).