## Glenmede Trust Co., N.A. v Infinity Q Capital Mgt. LLC

2024 NY Slip Op 30809(U)

March 13, 2024

Supreme Court, New York County

Docket Number: Index No. 160830/2022

Judge: Melissa A. Crane

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. MELISSA A. CRANE**     PART     **60M**

*Justice*

-----------------------------------------------------------------------X

THE GLENMEDE TRUST COMPANY, N.A.,

                  Plaintiff,

- v -

INFINITY Q CAPITAL MANAGEMENT LLC,JAMES
VELISSARIS, LEONARD POTTER, SCOTT LINDELL,
BONDERMAN FAMILY LIMITED PARTNERSHIP, LP,
INFINITY Q MANAGEMENT EQUITY LLC,TRUST FOR
ADVISED PORTFOLIOS, U.S. BANCORP FUND
SERVICES, LLC,EISNERAMPER LLP, QUASAR
DISTRIBUTORS, LLC,JOHN C. CHRYSTAL, ALBERT J.
DIULIO, CHRISTOPHER E. KASHMERICK, HARRY E.
RESIS, RUSSELL B. SIMON, STEVEN J. JENSEN,

                  Defendant.

-----------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 160830/2022 |
| MOTION DATE | 11/16/2023 |
| MOTION SEQ. NO. | 013 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 013) 142, 143, 144, 145, 146, 152, 157, 162, 181

were read on this motion to/for      DISMISSAL      .

Defendant Scott Lindell ("Lindell") has moved to dismiss Plaintiff The Glenmede Trust Company, N.A.'s ("Glenmede" or "Plaintiff") amended complaint pursuant to CPLR 3211(a)(7). The amended complaint alleges causes of action against Lindell for violation of sections 11 and 15 of the Securities Act of 1933. For the following reasons, the court dismisses both causes of action against Lindell.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter arises in connection to the collapse of a mutual fund called Infinity Q Diversified Alpha Fund ("Mutual Fund"). Defendant Infinity Q Capital Management ("Infinity Q Mgmt.") managed the Mutual Fund, selecting the Mutual Fund's portfolio of investments (Amended Complaint, NYSCEF Doc. No. 101, ¶¶ 28, 54). Individual defendants Lindell, James

Velissaris ("Velissaris") and Leonard Potter ("Potter") launched Infinity Q Mgmt. in 2014 with non-party David Bonderman ("Bonderman"), allegedly to act as investment advisor for both the Mutual Fund and a separate private hedge fund ("Hedge Fund") (*id.*, ¶ 4). Rather than stock the Mutual Fund with traditional stocks and bonds, Infinity Q Mgmt. purchased variance swaps as part of its strategy to "generate absolute returns that did not depend on what direction the market moved, but rather on how much the market moved (i.e., how volatile the market was)" (*id.*, ¶ 5).[1] These types of securities had no readily available market prices (*id.*, ¶ 7). Therefore, Infinity Q Mgmt. had to generate its own net asset value ("NAV") of the assets in the Mutual Fund on a daily basis (*id.*, ¶¶ 6-7). Infinity Q Mgmt. generated this NAV using the third-party valuation service Bloomberg offered, called BVAL (*id.*, ¶ 131). However, for many years, Velissaris managed to inflate artificially the value of the Mutual Fund by hundreds of millions of dollars (*id.*, ¶¶ 9-11). This resulted in an SEC investigation beginning in 2020 and the subsequent collapse of the Mutual Fund (*id.*, ¶¶ 11-13).

US Bank allegedly has established multiple series trusts as part of its mutual fund business, of which Defendant Trust for Advised Portfolios ("Trust") is one (*id.*, ¶¶ 64, 67). The Trust established the Mutual Fund under its umbrella (*id.*, ¶ 69). As is relevant for this motion, the Trust issued shares in the Mutual Fund pursuant to a Post-Effective Amendment to its Registration Statement on December 20, 2019 ("December 2019 Registration Statement") (*id.*, ¶ 142). Defendant Christopher Kashmerick signed the December 2019 Registration Statement as the President and Principal Executive Officer of the Trust (December 2019 Registration Statement, NYSCEF Doc. 127, p. 118). A number of other individuals signed the December 2019 Registration

---

[1] According to the amended complaint, variance swaps allow buyers to "bet on the volatility of an underlying asset, security, index, or currency exchange" (*see* Amended Complaint, ¶ 116). For each variance swap, the parties determine a "strike price" (*id.*, ¶ 118). If volatility "exceeds the strike price, the buyer of the swap . . . receives the payment," but if volatility "is below the strike price, the seller of the swap . . . receives the payment" (*id.*).

Statement, including Treasurer and Principal Financial Officer Russell Simon and Mutual Fund trustees John Chrystal, Albert DiUlio, and Harry Resis (*id.*; Amended Complaint, ¶¶ 37-40). Potter, Velissaris, and non-party Director Neil Gray all signed on behalf of non-party Infinity Q Commodity Fund, Ltd. (December 2019 Registration Statement, p. 119). Despite the amended complaint alleging that Lindell was one of the multiple defendants who "signed or authorized the signing of the December 2019 Securities Act Filing and/or [] otherwise actively participated in the sales process" (Amended Complaint, ¶ 297), Lindell did **not** sign the December 2019 Registration Statement (*see* December 2019 Registration Statement, pp. 118-119). Nor did Lindell "consent[] to having been named as the person[] who prepared or certified parts of the December 2019 Securities Act Filing" anywhere in the document or its exhibits (*see* Amended Complaint, ¶ 274; December 2019 Registration Statement). The focal point of Plaintiff's case against Lindell and the other defendants is that the December 2019 Registration Statement "contained false statements of material fact and/or omitted material facts that were required to be disclosed or necessary to make the statements therein not misleading" (Amended Complaint, ¶ 270).

Aside from his alleged role in the execution of the December 2019 Registration Statement, Plaintiff alleges that Lindell was the "Chief Risk Officer ('CRO'), head of operations, Chief Compliance Officer, a portfolio manager, and a member of the valuation committee of Infinity Q Mgmt. (*id.*, ¶ 30). According to the amended complaint, Lindell, despite being in a position to learn of Velissaris's fraud, ignored red flags. In particular, Plaintiff alleges that Infinity Q Mgmt., as a result of Velissaris improperly adjusting inputs to BVAL, reported valuations on variance swaps that were mathematically impossible (*id.*, ¶¶ 204-206). Infinity Q allegedly reported valuations high enough that volatility would have needed to be negative for the remainder of the term, which is not possible (*id.*, ¶ 205). The amended complaint alleges that Mutual Fund Treasurer

and CFO Russell Simon asked Lindell in an email about one instance of a mathematically impossible valuation, and Lindell failed to provide a satisfactory response (*id.*, ¶ 208).

Plaintiff also alleges that Lindell "noticed that there were inputs in BVAL that were inconsistent with the term sheets," that he "reviewed the counterparty marks that were different from Infinity Q [Mgmt.]'s marks," and that he "recognized a trend whereby Infinity Q [Mgmt.]'s final valuations of variance swaps upon settlement dropped drastically from Velissaris's interim valuations (*id.*, ¶ 214). Despite being aware of these red flags related to Infinity Q [Mgmt.]'s valuations, Lindell allegedly "turned a blind eye to Velissaris's manipulated valuations" (*id.*, ¶ 215).

After the Mutual Fund collapsed in March 2021, shareholders filed class action lawsuits related to the collapse of the Mutual Fund, and the parties reached a settlement that the court preliminarily approved on October 17, 2022 (*In re Infinity Q Diversified Alpha Fund Securities Litig.*, Index No. 651295/2021, NYSCEF Doc. No. 181). The court then held a final approval hearing on June 14, 2023. Plaintiff determined to opt out of the class action settlement and filed the complaint in this action on December 19, 2022 (Complaint, NYSCEF Doc. No. 2). Defendants, including Lindell, then moved to dismiss. However, on May 3, 2023, after Plaintiff informed Defendants that it intended to amend its complaint as of right, Defendants, including Lindell, stipulated to withdraw their pending motions to dismiss (Stipulation Withdrawing Motions to Dismiss, NYSCEF Doc. No. 94). Plaintiff then filed the amended complaint on May 26, 2023. Defendants, including Lindell, moved to dismiss the amended complaint for failure to state a claim pursuant to CPLR 3211(a)(7), and the court held oral argument on the motions to dismiss on November 15-16, 2023. For the following reasons, the court dismisses the causes of action against Lindell in their entirety.

**160830/2022 THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL
Motion No. 013**

**Page 4 of 10**

## DISCUSSION

On a motion to dismiss pursuant to CPLR 3211(a)(7), the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *see also Chapman, Spira & Carson, LLC v Helix BioPharma Corp.*, 115 AD3d 526, 527 [1st Dept 2014]).

The court notes that, despite attaching to his motion papers the affirmation of Deepa Devanathan (NYSCEF Doc. No. 144) and exhibits referenced therein (NYSCEF Doc. Nos. 145-146), Lindell has not moved to dismiss the amended complaint pursuant to CPLR 3211(a)(1) on the basis of a "defense [] founded upon documentary evidence" (CPLR 3211(a)(1); Opening Memo., NYSCEF Doc. No. 143, p. 1). Rather, the motion is limited to failure to state a cause of action under CPLR 3211(a)(7). Nevertheless, dismissal may be appropriate based on documentary evidence where the documentary evidence "flatly reject[s]" the plaintiff's cause of action (*see Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*, 115 AD3d 128, 134-135 [1st Dept 2014]). When a defendant submits documentary evidence, the standard shifts from "whether the plaintiff stated a cause of action to whether it has one" (*id.* at 135 [internal citations and quotation marks omitted]; *Kaplan v Conway & Conway*, 173 AD3d 452, 453 [1st Dept 2019] [finding that the motion court "properly considered the emails submitted by defendants in dismissing the complaint"]). Therefore, the court will consider the documentary evidence that Lindell has submitted.

1. Section 11

Section 11 of the Securities Act of 1933 allows a purchaser of securities to sue where a

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT        Page 5 of 10
LLC ET AL
Motion No.  013

5 of 10

[* 5]

registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading" (15 USCA § 77k[a]). To state a cause of action under section 11, a plaintiff must allege that they "(1) purchased a registered security . . . (2) the defendant participated in the offering in the manner specified by the statute; and (3) the registration statement contained an untrue statement of a material fact or omitted to state a material fact" (*Mahar v General Electric Company*, 188 AD3d 534, 535 [1st Dept 2020] [internal citation and quotation marks omitted]; *Hoffman v AT & T Inc.*, 67 Misc3d 1212(A), *5 [Sup Ct, NY County 2020]).

However, liability under section 11 is limited to discrete categories of defendants, and "courts have construed the list strictly" (*In re Global Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, *8 [SDNY Aug 8, 2005]). Section 11 liability may apply to signatories of the registration statement, directors or partners of the issuer, whether named in the registration statement or not, underwriters, and "every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement" (15 USC § 77k[a]; *Winter v Stronghold Digital Mining, Inc.*, 2023 WL 5152177, *5 [SDNY Aug 10, 2023] ["Section 11 applies to registration statements filed with the SEC and provides redress against a security's issuer, underwriter, and certain other statutorily enumerated parties."]; *Banerjee v Zhangmen Education Inc.*, 2023 WL 2711279, *5 [SDNY Mar 30, 2023]). While liability is "virtually absolute" for issuers of securities, "experts such as accountants" are accorded a "due diligence defense" (*In re Wachovia Equity Securities Litigation*, 753 F Supp 2d 326, 378-379 [SDNY 2011] [internal citations and quotation marks omitted]; *Winter*, 2023 WL 5152177, at *5 ["Section 11 thus imposes strict liability on issuers of securities, and negligence liability on the issuers' officers, directors and experts."]).

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT          Page 6 of 10
LLC ET AL
Motion No. 013

[* 6]                                                                6 of 10

The court grants Lindell's motion to dismiss the section 11 claim because Lindell has established that he did not fall into any of the enumerated categories of defendants. First, notwithstanding the amended complaint's allegation that Lindell was one of the individuals liable for "having signed or authorized the signing of the December 2019 Securities Act Filing" (Amended Complaint, ¶ 297), Plaintiff admits in its opposition papers that Lindell did **not** sign the December 2019 Registration Statement (Opposition, NYSCEF Doc. No. 162, p. 20). The only individuals who signed the December 2019 Registration Statement were Christopher Kashmerick, John Chrystal, Albert DiUlio, Harry Resis, Russell Simon, Potter, Velissaris, and Neil Gray (December 2019 Registration Statement, pp. 118-119; Ex. 1 to Devanathan Aff., NYSCEF Doc. No. 145). Further, Plaintiff makes no allegation that Lindell was a director or partner of the issuer, the Trust. Rather, the December 2019 Registration Statement makes it clear that Lindell was the Chief Risk Officer of Infinity Q Mgmt., who was "primarily responsible for the day-to-day management of the Fund" (*id.*, pp. 14, 25). Nor does the amended complaint allege that Lindell was in any way an underwriter for purposes of section 11.

Rather, Plaintiff's theory of section 11 liability against Lindell relies on the assertion that Lindell is "referenced as Infinity Q's risk-management expert throughout the [December 2019 Registration Statement]" (Opposition, p. 20). However, this characterization of Lindell as an "expert" appears nowhere in the December 2019 Registration Statement. Nor does the December 2019 Registration Statement refer to Lindell as either an "accountant, engineer, or appraiser," which are examples of individuals who can be held liable under section 11(a)(4). Even if Lindell could have been treated as a "person whose profession gives authority to a statement made by him" pursuant to section 11(a)(4), Lindell correctly argued that no liability would attach because the December 2019 Registration Statement does not reflect Lindell's consent to being named (Reply,

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT          Page 7 of 10
LLC ET AL
Motion No. 013

[* 7]                                                    7 of 10

NYSCEF Doc. No. 181. pp. 4-5; *see In re Lehman Bros. Mortgage-Backed Securities Litigation*, 650 F3d 167, 175 [2d Cir 2011] [noting that section 11 is limited to "statutorily enumerated parties," including "accountants or other experts **consenting** to be named as preparing or certifying part of the registration statement"] [emphasis added]). Contrary to the conclusory allegation that Lindell "consented to having been named as [a] person[] who prepared or certified parts of the December 2019 Securities Act Filing" (Amended Complaint, ¶ 274), the December 2019 Registration Statement contains no reference to such consent. Rather, the only reference in the December 2019 Registration Statement to a consent by any purported expert is the Index of Exhibits' reference to the "Consent of Independent Registered Public Accounting Firm," which allegedly relates to EisnerAmper (December 2019 Registration Statement, p. 120; Ex. 2 to Devanathan Aff., NYSCEF Doc. No. 146; Amended Complaint, ¶ 145). Therefore, because Lindell does not fall within one of the strictly construed statutorily enumerated categories of defendants, the court dismisses the section 11 claim against him.

> 2. Section 15

The court also dismisses the section 15 claim against Lindell. Section 15 provides that "[e]very person who, by or through stock ownership, agency, or otherwise . . . controls any person liable under sections [11] or [12] of [the Securities Act], shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable" (15 USCA § 77o; *Matter of NIO Inc. Securities Litigation*, 211 AD3d 464, 466 [1st Dept 2022]; *Erie County Employees' Retirement System v NN, Inc.*, 205 AD3d 644, 646 [1st Dept 2022]). To state a claim for a section 15 violation, a plaintiff must allege "(a) a primary violation by a controlled person, and (b) control by the defendant of the primary violator" (*In re Global Crossing. Ltd. Securities Litig.*, 2005 WL 1907005, *11 [SDNY Aug 8, 2005]; *Erie County*

**160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL**
**Motion No. 013**

**Page 8 of 10**

8 of 10

[* 8]

*Employees' Retirement System*, 205 AD3d at 646). In order to allege control, a plaintiff must allege the "power to direct or cause the direction of the management and policies of [the primary violators], whether through the ownership of voting securities, by contract, or otherwise" (*City of Omaha Police and Fire Retirement System v Evoqua Water Technologies Corp.*, 450 F Supp 3d 379, 427 [SDNY 2020]).

The amended complaint alleges that Lindell was a "control person[] of Infinity Q, the Mutual Fund, and/or [the Trust] by virtue of [his] management position[] with and/or ownership of Infinity Q" (Amended Complaint, ¶ 295). However, Lindell cannot be held liable as a control person of either Infinity Q Mgmt. or the Mutual Fund because the amended complaint lacks any remaining underlying section 11 or 12(a)(2) claims against those parties. A section 15 claim is "dependent on the existence of an underlying Securities Act claim" (*Feinberg v Marathon Patent Group Inc.*, 193 AD3d 568, 571 [1st Dept 2021] [finding lower court properly dismissed section 15 claim after dismissing underlying section 11 and 12(a)(2) claims]; *Matter of NIO Inc. Securities Litigation*, 211 AD3d 464, 466 [1st Dept 2022] [holding that lower court properly dismissed control person liability claims under section 15 because plaintiffs failed to allege a primary violation under sections 11 or 12(a)(2)]). The amended complaint never claimed an underlying section 11 or 12(a)(2) violation by the Mutual Fund, and the court dismissed any section 11 or 12(a)(2) claim against Infinity Q Mgmt. in the decision and order on Infinity Q Mgmt.'s motion to dismiss (*see* February 26, 2024 Decision and Order, NYSCEF Doc. No. 205).

Nor does Plaintiff sufficiently allege control person liability over the Trust. Plaintiff's opposition apparently abandoned the claim of control person liability over the Trust, focusing solely on alleged control of Infinity Q Mgmt. (Opposition, p. 16). In any event, neither the amended complaint nor the December 2019 Registration Statement provide any basis for a claim

160830/2022 THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL
Motion No. 013

Page 9 of 10

9 of 10

of control person liability as to the Trust. The amended complaint alleges that, along with Bonderman, Potter, and Velissaris, Lindell "created **Infinity Q**" and took on a number of roles at **Infinity Q**, including Chief Risk Officer (Amended Complaint, ¶¶ 4, 30, 214 [emphasis added]). The December 2019 Registration Statement confirms that any role Lindell had was with Infinity Q, describing that "Scott Lindell is the Chief Risk Officer of Infinity Q, and joined the firm in 2014" (December 2019 Registration Statement, p. 25). The court dismisses the section 15 claim against Lindell because there are no non-conclusory allegations that indicate Lindell had any role in the Trust, much less control of the Trust.

Accordingly, it is

**ORDERED** that Lindell's motion to dismiss the amended complaint's causes of action against him under sections 11 and 15 of the Securities Act is granted in its entirety.

|  |  |
|---|---|
| 03/13/2024 | _____ |
| DATE | MELISSA A. CRANE, J.S.C. |

| CHECK ONE: | | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | ☒ GRANTED | ☐ DENIED | | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL
Motion No. 013

Page 10 of 10

10 of 10